**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JEFFREY DEPENBROCK,

     Plaintiff

v.

PARKE, et al.,

    Defendants

Case No.: 3:20-cv-00492-ART-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 36

    This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is Defendants' motion for summary judgment. (ECF Nos. 36, 36-1 to 36-8, 38-1.) Plaintiff filed a response. (ECF No. 41.) Defendants filed a reply. (ECF No. 42.)

    After a thorough review, it is recommended that Defendants' motion for summary judgment be granted.

**I. BACKGROUND**

    Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 5.)

    The court screened Plaintiff's amended complaint and allowed him to proceed with a Fourteenth amendment due process claim for violation of his right to medical privacy against Papke, Baca, Peterman, and Wickham. (ECF No. 6.)

    Plaintiff alleges that on March 16, 2020, he provided a urine sample for a drug test, and the March 19, 2020, lab analysis indicated the sample was diluted with a low creatine level. Plaintiff claims that defendant Papke issued a notice of charges for an "MJ44: Failure to Submit

Drug/Alcohol Test." The charge stated that Papke was assigned as the institutional investigator at Warm Springs Correctional Center (WSCC), and received a result from a toxicology laboratory for Plaintiff which indicated a dilute sample with a low creatine level. Papke's report went on to state that medical was contacted, and Papke was informed that Plaintiff has hepatitis C, and that might have caused him to have a low creatine level. Plaintiff was found not guilty of the charge, but he alleges the charge for the major rule violation remains on his institutional record. Plaintiff alleges that he did not authorize the disclosure of his medical condition by Papke in the notice of charges.

Plaintiff filed a grievance that his medical information was publicly disclosed. He alleges that Peterman denied the initial level grievance, Baca denied the first level grievance, and Wickham denied the second level grievance. He claims these defendants had the opportunity to have this information removed from the notice of charges report to terminate further improper disclosure of the medical information.

The court has recommended that defendant Papke be dismissed with prejudice insofar as he is sued in his official capacity, but without prejudice insofar as he is sued in his individual capacity because Papke is deceased and no timely motion to substitute his executor or administrator was filed. In addition, it has been recommended that Peterman be dismissed without prejudice due to lack of timely service under Federal Rule of Civil Procedure 4(m). (ECF No. 35.) This report and recommendation remains pending before District Judge Traum.

The remaining defendants, Baca and Wickham, move for summary judgment, arguing Plaintiff cannot establish a violation of the Fourteenth Amendment right to medical privacy; Baca and Wickham did not personally participate in any constitutional violation; and they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

1   pleadings and set forth specific facts by producing competent evidence that shows a genuine

2   dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

3                                         **III. DISCUSSION**

4   **A. Facts**

5          The following facts are undisputed:

6          On March 16, 2020, Plaintiff provided a urine sample for a drug test. A lab analysis dated

7   March 19, 2020, from Rosewood Toxicology Laboratory indicated the sample was "dilute,"

8   citing a low creatine level. (ECF No. 38-1 at 2.)

9          That same day, Correctional Officer Papke wrote Plaintiff up on charges for an MJ44—

10  failure to submit to a drug or alcohol test. Papke included a report of violation in the notice of

11  charges stating that he was assigned as the institutional investigator at WSCC, and received

12  Plaintiff's lab results indicating his urine sample was diluted with a low creatine level. Medical

13  was contacted and informed Papke that Plaintiff has hepatitis C, and that might cause him to

14  have a low creatine level. (ECF No. 36-1 at 2.)

15         Plaintiff initiated an informal level grievance on April 23, 2020, stating that the WSCC

16  medical department and Papke violated his rights by disclosing his medical condition and putting

17  it in an incident report, without Plaintiff having consented or signed a release. (ECF No. 36-2 at

18  2-7.) Peterman denied the informal level grievance, finding that the information provided by

19  medical to Papke fell within the scope of their professional duties under Administrative

20  Regulation (AR) 639.02.3. Peterman explained that medical provided this information so

21  Plaintiff would not be found guilty of something that was medically out of Plaintiff's control.

22  Finally, Peterman noted that the information placed in the notice of charges was not public, and

23

1  the information is only given to personnel who need the information for the purpose of a decision

2  and no further. (ECF No. 36-2 at 9.)

3         Plaintiff filed a first level grievance on May 4, 2020. (ECF No. 36-2 at 10-12.) Baca, who

4  was the warden at WSCC, denied the first level grievance, finding that Plaintiff was answered

5  appropriately at the informal level and that HIPPA allows medical information to be acquired

6  when used for official duty/business. (ECF No. 36-2 at 13; ECF No. 36-5 at 2 ¶ 3.)

7         Plaintiff filed a second level grievance on May 19, 2020. (ECF No. 36-2 at 14-16.)

8  Wickham, who was NDOC's deputy director, denied the second level grievance, finding the

9  medical information was necessary to make a proper decision in his disciplinary hearing where

10 Plaintiff was found not guilty. He noted that the medical department did not see a HIPPA

11 violation. (ECF No. 36-2 at 17; ECF No. 36-4 at 2 ¶ 3.)

12 **B. Analysis**

13        The Supreme Court has not expressly recognized a constitutional right to informational

14 privacy, such as that alleged here. In *Whalen v. Roe*, 429 U.S. 589 (1977), physicians and

15 patients brought a lawsuit to challenge the constitutionality of statutes in New York that required

16 the state to record the contact information of all persons who obtained certain prescription drugs.

17 The physicians and patients argued the statute invaded a "constitutionally protected 'zone of

18 privacy.'" *Id*. at 599. The Court noted that "cases sometimes characterized as protecting

19 'privacy' have" involved "at least two different kinds of interests[:]" "the individual interest in

20 avoiding disclosure of personal matters," and "the interest in independence in making certain

21 kinds of important decisions." *Id*. at 600. The physicians and patients argued that the statute

22 threatened to impair both of those interests. *Id*. Without explicitly recognizing that such a right

23 does exist under the Constitution, the Court ultimately held that the program did not "pose a

1  sufficiently grievous threat to either interest to establish a constitutional violation" under the
2  Fourteenth Amendment. *Id*. at 600, 603, 606.

3     In two subsequent cases, the Supreme Court declined to specifically address whether
4  there was a constitutional right to privacy of this sort. Instead, the Court assumed, without
5  deciding, that there was such a right for the purpose of its analyses. *See National Aeronautics*
6  *and Space Administration v. Nelson*, 562 U.S. 134 (2011); *Nixon v. Administrator of General*
7  *Services*, 433 U.S. 425, 457 (1977).

8     In 2010, the Ninth Circuit addressed a claim of violation of the right to privacy in the
9  medical records of a prisoner being evaluated for civil commitment in California under the
10  state's Sexually Violent Predator Act. *Seaton v. Mayberg,* 610 F.3d 530 (9th Cir. 2010). The
11  inmate alleged his constitutional right to privacy was violated when psychologists reviewed his
12  medical records and provided their opinions to the district attorney's office recommending that
13  he be civilly committed. *Id*. at 532.

14     The Ninth Circuit pointed out the general principle of privacy law for prisoners is that
15  "whatever privacy right he has may be overridden for legitimate penological reasons." *Id*. at 534.
16  "'[I]mprisonment carries with it the circumscription or loss of many significant rights.'" *Id*.
17  (quoting *Hudson v. Palmer*, 468 U.S. 517, 524 (1984)). "Loss of privacy is an 'inherent
18  incident[] of confinement'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). The court
19  joined other circuits in holding "that prisoners do not have a constitutionally protected
20  expectation of privacy in prison treatment records when the state has a legitimate penological
21  interest in access to them." *Id*. (citing *Doe v. Delie*, 257 F.3d 309, 311 (3d Cir. 2001); *Powell v.*
22  *Schriver*, 175 F.3d 107, 112 (2d Cir. 1999); *Tokar v. Armontrout*, 97 F.3d 1078, 1084 (8th Cir.
23  1996); *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995); *Doe v. Wigginton*, 21 F.3d 733,

1 | 740 (6th Cir. 1994); *Moore v. Mabus*, 976 F.2d 268, 271 (5th Cir. 1992); *Harris v. Thigpen*, 941
2 | F.2d 1495, 1513, 1521 (11th Cir. 1991)).

3 |      The Ninth Circuit stated that "[p]risons need access to prisoners' medical records to
4 | protect prison staff and other prisoners from communicable diseases and violence, and to manage
5 | rehabilitative efforts." *Id*. at 535. The court gave several examples, including: "If the prison is
6 | attempting a rehabilitative program, practical program management may require access to
7 | medical records to see if the prisoner is complying and if the program is working." *Id*.

8 |      Here, Plaintiff's medical condition was disclosed in an investigative report and notice of
9 | charges concerning the results from a laboratory showing Plaintiff's urine sample was diluted.
10 | Medical was contacted to determine if there was a reason Plaintiff's creatine would be low and
11 | the sample dilute. Plaintiff presents no evidence of any ulterior motive for disclosing this
12 | information. Therefore, this would seem to fall within legitimate penological interests
13 | contemplated by *Seaton* so there was no violation of any constitutional right to privacy, to the
14 | extent such a right has been recognized at all.

15 |      In any event, the moving defendants—Wickham and Baca—did not request the
16 | information from the medical department, and they did not author the investigation report or
17 | notice of charges disclosing Plaintiff's medical condition. Instead, they responded to his first and
18 | second level grievances where Plaintiff himself described how Papke had disclosed his medical
19 | condition.

20 |      Finally, the court finds Defendants are entitled to qualified immunity. "In evaluating a
21 | grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a
22 | constitutional right and (2) the right was clearly established at the time of the alleged
23 | misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v.*

*Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)). "'While the constitutional violation prong concerns the reasonableness of the officer's *mistake of fact*, the clearly established law prong concerns the reasonableness of the officer's *mistake of law*.'" *Id.* at 968 (citing *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011)) (emphasis original). "Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages." *Id.* (citing *Pearson*, 555 U.S. at 236).

"Whether a constitutional right is clearly established is a question of law for the court to decide." *Id.* (citing *Elder v. Holloway,* 510 U.S. 510, 511 (1994); *Morales v. Fry*, 873 F.3d 817, 825 (9th Cir. 2017)). "For a constitutional right to be clearly established, a court must define the right at issue with 'specificity' and 'not … at a high level of generality.'" *Id.* (quoting *City of Escondido v. Emmons*, 139 S.Ct. 500, 503 (2019) (per curiam)). "'[A] court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation confronted.'" *Id.* at 969 (quoting *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867 (2017)). "'While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate,'" and must "'squarely govern[ ]' the specific facts at issue[.]" *Id.* (citations omitted).

There is no case that holds that the Constitution is violated when a prison official denies a grievance where an inmate asserts that his medical condition was disclosed in an investigation report and notice of charges where a drug and alcohol laboratory test result indicated his sample was diluted.

1  In other words, a reasonable person in Wickham's or Baca's position would not have

2  known their conduct violated the law. As such, these Defendants are entitled to qualified

3  immunity. *See O'Neill v. Bannister,* No. 3:12-cv-00030-LRH-WGC, 2012 WL 6968937, at *9

4  (D. Nev. Aug. 29, 2012) (defendant entitled to qualified immunity because right to informational

5  privacy in connection with disclosure of medical information was not clearly established);

6  *Wampler v. Carson City Sheriff,* No. 3:11-cv-546-RCJ-VPC, 2012 WL 3205943, at *7 (D. Nev.

7  Aug. 3, 2012) (defendant entitled to qualified immunity because right to informational privacy

8  was not clearly established); *Huling v. City of Los Banos,* 869 F.Supp.2d 1139, 1155 (E.D. Cal.

9  2012) (police officer entitled to qualified immunity  because constitutional informational privacy

10  right was not clearly established); *O'Phelan v. Loy,* No. 09-00236-SOM-KSC, 2011 WL 719053,

11  at *11 (D. Haw. Feb 18, 2011) (defendant entitled to qualified immunity because "the

12  constitutional right of informational privacy is murky, at best).

13         The court will now address several additional arguments raised in Plaintiff's opposition.

14         First, Plaintiff complains that Defendants included his medical information in the notice

15  of charges as an exhibit to their motion. However, Plaintiff's complaint, filed publicly, describes

16  this information as well as quotes verbatim from the same notice of charges.

17         Second, Plaintiff mentions his medical disability and classification to a flat yard, but

18  these allegations are not related to this action. He also asserts he was transported to a different

19  institution in retaliation for filing this action, but he does not have a retaliation claim proceeding

20  in this case.

21         In conclusion, Defendants' motion for summary judgment should be granted.

22  ///

23  ///

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 36).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 2, 2023

_____
Craig S. Denney
United States Magistrate Judge

11